IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RETSEL CORPORATION d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO,<br><br>Defendants. | CASE NO. 8:26-cv-00066<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff, United States Liability Insurance Company ("USLI") hereby submits this Brief in Support of its Motion for Summary Judgment.

## INTRODUCTION

USLI filed a Declaratory Judgment Complaint on February 17, 2026 (Doc. 1) seeking a judicial declaration that its named insured, Retsel Corporation d/b/a Grand Gateway Hotel and d/b/a Cheers Sports Lounge and Casino (collectively "Retsel") had breached policy conditions requiring its cooperation with USLI in the underlying action, entitled *NDN Collective v Retsel, et. al*, and filed in the United States District Court for the District of South Dakota Western Division at docket no. 5:22-cv-05027 (the "NDN Action").

USLI initially sought judicial intervention for the specific reason that its named insured, Retsel, was interfering with USLI's defense of Retsel in the underlying NDN Action. (Doc. 1). Retsel's constant harassment of USLI's defense counsel demanding that they file briefs grounded in conspiracy theory based arguments, attacking various politicians and other public figures and drafted through the use of open source generative artificial intelligence; its pursuit of

counterclaims against the plaintiffs in the NDN Action (collectively "Intervenors") propounding these same conspiracy theories; and its unauthorized filings in the defense of the underlying NDN Action advancing these conspiracy theories have, as a matter of law, prejudiced USLI's defense of Retsel in the underlying action. (Doc. 1 at ¶¶ 13-18).[1]

In this regard, USLI has spent significant sums defending Retsel in the NDN Action which sought compensatory and punitive damages for Retsel's discrimination against Native Americans seeking to rent rooms at its hotel. *See* NDN Action. The circumstances giving rise to the underlying action resulted in, *inter alia*, an order from the Department of Justice requiring Retsel to cease and desist engaging in discriminatory conduct targeted towards Native Americans, a judgment against Retsel for compensatory and punitive damages, and a judgment against one of Retsel's principals for assault against one of the Native American claimants. *See* NDN Action. USLI has vigorously defended the NDN Action on various legal and constitutional grounds, including, but not limited to, the fact that the claimants were "testers" and that they did not incur any legally cognizable damages as a result of Retsel's conduct. USLI, through a gratuitous defense under reservation, is also vigorously defending against the attorneys for Intervenors' motion seeking fees of over $3.5 million dollars, which are grossly disproportionate to the nominal damages actually awarded to the claimants.

In the Motion to Intervene filed by the plaintiffs in the NDN Action, they purport to have standing to challenge USLI's legally justified complete disclaimer of coverage for any award of punitive damages and attorney fees. (Doc. 9). Any order of this Court on the Motion to

---

[1] For additional examples of Retsel's non-cooperation, USLI respectfully requests the Court consider taking judicial notice of the following filings in the underlying NDN action filed at 5:22-cv-05086-LLP: Docket No. 476, Motion for Leave to Supplement by Retsel Corporation, with attachments (attaching various sources advancing conspiracy theories) and Docket No. 459, Memorandum in Support re Motion to Vacate Judgment (attaching various exhibits with information on family members of Judge Piersol and questioning the impartiality of the court while motion on attorneys' fees was pending).

Intervene should be binding upon Retsel as Retsel is a party to the action who has been served, was given notice of the Motion, and has an opportunity to be heard on the issues raised in the Motion to Intervene. However, in addition to opposing the Motion to Intervene, USLI also moves for summary judgment against Retsel on this specific issue so that there can be no doubt that any order had on the merits of USLI's disclaimer of indemnity for punitive damages and attorney fees will be binding upon Retsel as well.

USLI can properly move for summary judgment against Retsel prior to a responsive pleading by Retsel because the issue of whether USLI has any duty to indemnify Retsel for the award of punitive damages or a potential future award of attorney fees is determined solely on the legal issues of the terms of insurance policy issued to Retsel, embraced in the Complaint and submitted in support of this Motion for Summary Judgment.

USLI can also timely seek summary judgment on all its coverage positions against Retsel at this time because in addition to USLI pleading that Retsel breached the "duty to cooperate" policy conditions, USLI also pleads in Paragraph 8 of its Complaint that there is no coverage for attorneys' fees and punitive damages, and this similarly presents a legal issue only based upon the Complaint and terms of the Policy.

## ARGUMENT AND AUTHORITIES

USLI is entitled to summary judgment and a declaration that there is no coverage under the Policy for punitive damages or attorney fees.

### A. Summary Judgment Standard.

This Court should grant summary judgment because the pleadings, supporting papers, affidavits and admissions on file demonstrate there are no genuine issues of material fact, and USLI is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 327 (1986) ("[t]he Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact."). A party may file a motion for summary judgment at any time after the Complaint is filed, up to 30 days after the close of all discovery and there is no requirement that a party must first wait for discovery to take place. *See* Fed. R. Civ. P. 56(b); *Reflectone, Inc. v. Farrand Optical Company, Inc.*, 862 F.2d 841, 844 (11th Cir. 1989).

**B. The Policy does not Provide Coverage for an Award of Punitive Damages.**

The Policy expressly provides:

> I. INSURING AGREEMENT
>
> **A.** The **Company** will pay on behalf of the **Insured**, **Loss** in excess of the Retention not exceeding the Limit of Liability show on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**
>
> ….
>
> III. DEFINITIONS
>
> …
>
> **PUNITIVE DAMAGES EXCLUSION**
>
> It is hereby agreed that Section III. DEFINITIONS is amended by deleting paragraph **K**. and replacing it with the following:
>
> **K.** **"Loss"** means damages, settlements, front pay, back pay and pre-judgment and post-judgment interest awarded by a court.
>
> **Loss** also includes liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, and the Fair Labor Standards Act (if endorsement EPL-162 is endorsed to this policy), all as amended, or any

> rules or regulations promulgated thereunder, or similar provisions of any federal, state or local law, statute or regulation to the extent such damages are insurable under applicable law, statute or regulation.
>
> **Loss** does not include:
>
> **(1)** fines, penalties, taxes, punitive and exemplary damages and the multiplied portion of any multiplied damage award;
>
> **(2)** monetary sanctions that are uninsurable by operation of law;
>
> **(3)** an express obligation to make payment in the event of the termination of employment.

(Ex. 1, Linda Carney Declaration, Ex. A attached thereto (the USLI Insurance Policy for Retsel Corporation) at pp. 1, 8-9, 12 of 24).

Accordingly, the Policy expressly excludes "punitive and exemplary damages" from the "Loss" that USLI will pay on behalf of Retsel. *See Dairyland Ins. Co. v. Wyant*, 474 N.W.2d 514, 516 (S.D. 1991) (held that when the insurance policy confined its coverage to compensatory damages, punitive damages were not covered).

Moreover, even if that were not enough, in South Dakota it is against public policy for an insurance policy to provide coverage for an award of punitive damages. *See Fort Pierre v. United Fire & Casualty Co.*, 463 N.W.2d 845, 848 (S.D. 1990) ("[A]s a general rule, it is against public policy to allow the insured wrongdoer to shift the burden of payment of punitive damages to its insurer."); SCDL 53-9-3 ("[a]ll contracts which…directly or indirectly…exempt anyone from responsibility for his own fraud or willful injury to the person or property of another…are against public policy of the law.")

Accordingly, the Policy does not provide coverage for the award of punitive damages against Retsel as a matter of law, and USLI is entitled to summary judgment on this claim.

**C. The Policy does not Provide Coverage for an Award of Attorney Fees.**

As noted above, USLI's obligation under the Policy is only to pay for a "Loss" for which the coverage applies. Loss is defined in the Policy as being limited to: "damages, settlements, front pay, back pay and pre-judgment and post-judgment interest awarded by a court." The attorney fees sought against Retsel in the NDN Action are pursuant to 42 U.S.C. § 1988(b) which provides, in part: "…the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee **as part of the costs**." 42 U.S.C. § 1988(b) (emphasis added). "Costs" are distinct and are not the equivalent to, or remotely related to: "damages," and certainly the same is true as to "…settlements, front pay, back pay and pre-judgment and post-judgment interest awarded by a court…" *See Sullivan County v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991) *citing Oates v. Oates*, 866 F.2d 203, 207 (6th Cir. 1989) (in the language of 42 U.S.C. § 1988 "there is a clear distinction between 'costs' and 'damages.'")

Furthermore, not only are "costs" not included within the definition of "Loss" in the Policy, but an award of attorney fees is considered to be "costs" that the Court "*taxes*" against the insured, and such "taxes" are also specifically excluded within the definition of Loss in the Policy. (Doc. 1-1 at EPL 163 at 1 ("**Loss** does not include: **(1)** …taxes…"). *See Oates*, 866 F.2d at 207 ("Congress expressed an unambiguous intent in 42 U.S.C. § 1988 to award attorney's fees 'as part of costs'; i.e., as an additional component of the traditional costs taxed by the court pursuant to 28 U.S.C. § 1920.").

Directly on point, several courts have ruled that attorney fees awarded as "costs" are not covered under an insurance policy, which covers "damages." *See, e.g., Sullivan County*, 925 F.2d at 153; *School Dist. of Shorwood v. Wausau Ins. Co., et. al.*, 488 N.W. 2d 82 (Wis. 1992)

In *Sullivan County*, the Court noted that the insurance policy at issue covered "damages" but not "costs." *See* 925 F.2d at 153. Accordingly, as the award of attorney's fees under § 1988 was a cost, and not damages, the applicable policy did not cover the award of attorney fees. *See id*.

Similarly, in *School Dist. of Shorwood*, the Supreme Court of Wisconsin held:

> The American rule is that attorney fees are generally not awarded to the prevailing party unless authorized by statute or enforceable contract. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260-62 (1975). However, there are numerous statutory and common-law exceptions which allow an award of attorney fees to the prevailing party in addition to statutory or judicial remedies. Some of these exceptions define attorney fees as an element of the costs, while others separate fees from other taxable costs. Under 42 U.S.C. sec. 1988, **attorney fees constitute part of the costs**. Therefore, we conclude that an award of attorney fees under 42 U.S.C. sec. 1988 **do not constitute 'damages.'**.... Because a request for attorney fees under 42 U.S.C. sec. 1988 does not constitute 'damages' under the terms of the insurance policies at issue here, the insurers had no duty to defend Shorewood and Greenfield in the underlying discrimination action.

*Id* at. 378-379

Exactly on point, here, the Policy only covers "damages," not "costs" taxed against the insured. And, furthermore, those "costs" that Intervenors seek (if awarded), would be "costs" that the Court "taxes" against the insured. Such "taxes" are also specifically excluded under the definition of "Loss" in the Policy. Accordingly, USLI is entitled to summary judgment that if there is an attorney fees award against Retsel, it is not covered under the Policy.

## CONCLUSION

For the reasons stated above, the Court should grant USLI summary judgment that it does not owe coverage under the Policy for an award of punitive damages or attorney fees, if any were to be awarded, against Retsel.

DATED this 20th day of March, 2026.

UNITED STATES LIABLITY
INSURANCE COMPANY,
Plaintiff,

By *s/ Bonnie M. Boryca*

Bonnie M. Boryca, NE Bar #24886
ERICKSON | SEDERSTROM, P.C.
Regency Westpointe, Suite 100
10330 Regency Parkway Drive
Omaha, Nebraska 68114
(402) 397-2200
boryca@eslaw.com
*Counsel for Plaintiff United States Liability Insurance Company*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that this brief complies with NECivR 7.1(d)(1)(A). This brief contains 2,157 words. To certify the word count, the undersigned relied upon the word-count function of Microsoft Office 365 MSO (Version 2011), applied to include all text, including the caption, footnotes, headings, and signature block.

*s/ Bonnie M. Boryca*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing Plaintiff's Brief in Support of Its Motion for Summary Judgment was filed using the Court's CM/ECF System, which will serve notice on all parties who have appeared and are registered or eligible to receive such notice, and served via U.S. Mail on Defendant's addresses below on the 20th day of March, 2026:

Retsel Corporation d/b/a Grand Gateway Hotel and
d/b/a Cheers Sports Lounge and Casino
1721 N Lacrosse Street
Rapid City, SD 57701

and

c/o Registered Agent, Paul J. Andrews
528 Kansas City St., Suite 5
Rapid City, SD 57701

*s/ Bonnie M. Boryca*